HOGAN LOVELLS US LLP
Paul B. Salvaty (Bar No. 171507)
1999 Avenue of the Stars, Suite 1400
Los Angeles, California  90067
Telephone:   (310) 785-4600
Facsimile:    (310) 785-4601
paul.salvaty@hoganlovells.com

HOGAN LOVELLS US LLP
Anna Kurian Shaw (*Pro Hac Vice Pending*)
Brendan C. Quinn (*Pro Hac Vice Pending*)
Hadley Dreibelbis (*Pro Hac Vice Pending*)
555 13th Street, NW
Washington, DC 20004
Telephone:   (202) 637- 5600
Facsimile:    (202) 637- 5910
anna.shaw@hoganlovells.com
brendan.quinn@hoganlovells.com
hadley.dreibelbis@hoganlovells.com

*Attorneys for Plaintiff*
Kia America, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIA AMERICA, INC., | Case No. _____ |
| Plaintiff, | **COMPLAINT FOR:** |
| v. | **1. Federal Trademark Infringement (15 U.S.C. S 1114)** |
| RALLY AUTO GROUP, INC. d/b/a RALLY KIA; DALIA AUTO GROUP, INC.; ALAM Z. KHAN; and DALIA K PROPERTIES AND HOLDINGS LLC, | **2. Unfair Competition by False Designation of Origin and False or Misleading Representation (15 U.S.C. S 1125(a)(1)(A))** |
| Defendants. | **3. Federal Trademark Dilution (15 U.S.C. S 1125(c))** |
| | **4. Common Law Trademark Infringement** |
| | **5. Unfair Competition** |
| | **6. Breach of Contract** |
| | **7. Violation of California Bus. & Prof. Code S 14245** |
| | **8. Violation of California Bus. & Prof. Code S 17200** |

Plaintiff KIA AMERICA, INC., by and through undersigned counsel, and for its Complaint against Defendants RALLY AUTO GROUP, INC. d/b/a RALLY KIA, DALIA AUTO GROUP, INC., ALAM Z. KHAN, and DALIA K PROPERTIES AND HOLDINGS LLC (collectively, the "**Defendants**"), states and alleges as follows:

## NATURE OF THE ACTION

1.      This is a civil action for trademark infringement under the Lanham Act of 1946, as amended, 15 U.S.C. § 1114, federal unfair competition under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), trademark dilution under the Lanham Act, 15 U.S.C. § 1125(c), common law trademark infringement and unfair competition under California law, breach of contract under California law, statutory trademark infringement under California Business and Professions Code § 14245, and statutory unfair competition under California Business and Professions Code § 17200.

2.      This action involves the unauthorized transfer and/or sale of an interest in, and management control of, one Kia dealership located in the State of California, thereby enabling the Defendants to make unauthorized use of Plaintiff's trademarks.

## PARTIES

3.      Plaintiff Kia America, Inc. ("**KUS**") is a corporation organized and existing under the laws of the State of California, with its principal place of business at 111 Peters Canyon Road, Irvine, California 92606-1790.  Prior to April 5, 2021, KUS's corporate name was Kia Motors America, Inc.

4.      Defendant Rally Auto Group, Inc. d/b/a Rally Kia ("**Rally Kia**") is a corporation organized and existing under the laws of the State of California, with its principal place of business at 438 Auto Vista Drive, Palmdale, California 93551.

5.      Defendant Dalia Auto Group, Inc. ("**Dalia Auto**") is a corporation organized and existing under the laws of the State of California, with its principal

place of business at 4545 W. Ramsey Street, Banning, California 92220, and with a mailing address of 909 West 21st Street, San Bernardino, California 92405.

6.      Defendant Dalia K Properties and Holdings LLC ("**Dalia K**") is a limited liability company organized and existing under the laws of the State of California, with its principal place of business at 438 Auto Vista Drive, Palmdale, California 93551, and with a mailing address of 909 West 21st Street, San Bernardino, California 92405.  The company was previously named Dalia *Kia* Properties and Holdings LLC but has amended its name within the past two weeks.

7.      On information and belief, Alam Z. Khan is the Chief Executive Officer, Secretary, Chief Financial Officer and sole Director of Dalia Auto.

8.      On information and belief, Mr. Khan is the sole Managing Member of Dalia K.

9.      Dalia Auto and Mr. Khan will be collectively referred to herein as the "**Dalia Defendants**."

## JURISDICTION AND VENUE

10.     This Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1338(a) (original jurisdiction over trademark actions), and 15 U.S.C. § 1051 et seq. (the federal Trademark Act). This Court has jurisdiction over these Claims for Relief under 15 U.S.C. §§ 1116-1118.

11.     The fourth through eighth Counts arise under California statutory and common law.  This Court has jurisdiction over the fifth Count under 28 U.S.C. § 1338(b) in that this claim is joined with substantial and related claims brought under the laws of the United States.  This Court also has jurisdiction over the fourth, fifth, sixth, seventh, and eighth Counts under the doctrine of supplemental jurisdiction, 28 U.S.C. § 1367, because the federal and state claims are based on the same operative facts, and judicial economy, convenience, and fairness to the parties will result if this Court assumes and exercises jurisdictions over the state law

1  claims.

2    12.   This Court has personal jurisdiction over Defendant Rally Kia because

3  it is organized and exists under the laws of the State of California, has its principal

4  place of business in California, and has engaged in the conduct alleged in this

5  complaint in California.

6    13.   This Court has personal jurisdiction over Defendants Dalia Auto and

7  Dalia K because each is organized and exists under the laws of the State of

8  California, has its principal place of business in California, and has engaged in the

9  conduct alleged in this complaint in California.

10    14.   This Court has personal jurisdiction over Defendant Mr. Khan because

11  he is doing business in the State of California and has engaged in the conduct

12  alleged in this complaint in California.

13    15.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because

14  Defendants Rally Kia, Dalia Auto, Dalia K, and Mr. Khan reside in this District and

15  a substantial part of the events or omissions giving rise to the claims in this action

16  occurred in the District.

17  ## ALLEGATIONS OF FACT
### KUS And The Kia Marks
18

19    16.   Kia Motors Corporation ("**KMC**") is the manufacturer of Kia-branded

20  motor vehicles, parts, and accessories (the "**Kia Products**") sold and distributed

21  throughout the world.

22    17.   Since 1994, when KMC first began importing Kia Products into the

23  United States, KUS has served as the exclusive U.S. distributor of Kia Products and

24  provides KMC's sales, financing, marketing, distribution, dealer, repair, and

25  maintenance services (the "**Kia Services**") in the United States.

26    18.   KUS owns, *inter alia*, the following registrations (the "**Kia**

27  **Registrations**") for trademarks incorporating the Kia name, whether in standard

28  character or design form (the "**Kia Marks**") in connection with goods and services

related to the Kia Products and the Kia Services.  Copies of the Certificates of Registration issued by the United States Patent and Trademark Office ("USPTO") for the Kia Marks are attached hereto as **Exhibit A**.

| REGISTRATION NUMBER | MARKS | GOODS AND SERVICES |
|---|---|---|
| 3,101,388 |  | Retail financing services, namely installment sale and lease contracts in connection with the sale and lease of motor vehicles to consumers; wholesale financing services; and commercial lending to motor vehicle dealers. |
| 4,837,002 |  | Providing extended warranty programs for pre-owned motor vehicles.<br><br>Emergency roadside assistance services, namely, responding to calls for roadside assistance, flat tire changing, emergency fuel supplying, and battery jump starting.<br><br>Vehicle inspection services. |
| 4,837,000 |  | Providing extended warranty programs for pre-owned motor vehicles.<br><br>Emergency roadside assistance services, namely, responding to calls for roadside assistance, flat tire changing, emergency fuel supplying, and battery jump starting.<br><br>Vehicle inspection services. |
| 5,030,207 |  | Financing services, namely financing services for consumers engaging in installment sale and lease contracts for the purchase or lease of motor vehicles; wholesale financing services; and commercial |

| REGISTRATION NUMBER | MARKS | GOODS AND SERVICES |
|---|---|---|
| | | lending to motor vehicle dealers. |
| 4,713,720 |  | Installation, maintenance and repair of automobiles. |
| 4,313,344 |  | Apparatus in automobile for video monitoring and display of the rear of automobiles, namely, an on-board automobile surveillance system comprised of cameras and monitors; electronic control unit in automobile for tracking and displaying wear information for automobile parts; electronic control unit in automobile for tracking and displaying remote door unlock, theft detection and notification status, stolen vehicle tracking, automatic notification of air bag deployment, and interacting with a customer service center; electronic control unit in automobile for interacting with an automobile customer service center and displaying information; diagnostic units in automobiles, namely, sensors and detectors for use in tracking, displaying and controlling the actuation and operation of safety apparatus and equipment; electronic control unit in automobile for navigation; electronic control unit in automobile for receiving, transmitting, storing, and displaying sound, data, music, video and text; electronic control unit in automobiles for use with radio and electronic |

| REGISTRATION NUMBER | MARKS | GOODS AND SERVICES |
|---|---|---|
|  |  | media players; electronic control unit in automobiles for transmitting vehicle diagnostic information, for transmitting vehicle status information to emergency and service personnel, for receiving and displaying traffic status information, and for providing and displaying directional guidance information. |
| 4,154,511 | KIA UVO | Apparatus in automobile for video monitoring and display of the rear of automobiles, namely, an on-board automobile surveillance system comprised of cameras and monitors; electronic control unit in automobile for tracking and displaying wear information for automobile parts; electronic control unit in automobile for tracking and displaying remote door unlock, theft detection and notification status, stolen vehicle tracking, automatic notification of air bag deployment, and interacting with a customer service center; electronic control unit in automobile for interacting with an automobile customer service center and displaying information; diagnostic units in automobiles, namely, sensors and detectors for use in tracking, displaying and controlling the actuation and operation of safety apparatus and equipment; electronic control unit in automobile for navigation; electronic control unit in automobile for receiving, |

| REGISTRATION NUMBER | MARKS | GOODS AND SERVICES |
|---|---|---|
| | | transmitting, storing, and displaying sound, data, music, video and text; electronic control unit in automobiles for use with radio and electronic media players; electronic control unit in automobiles for transmitting vehicle diagnostic information, for transmitting vehicle status information to emergency and service personnel, for receiving and displaying traffic status information, and for providing and displaying directional guidance information. |
| 3,289,296 | KIA OPTIMA | Land motor vehicles, namely, automobiles sold through an authorized Kia dealer. |
| 5,030,205 | KIA FINANCE THE SMARTEST WAY TO FINANCE | Financing services, namely financing services for consumers engaging in installment sale and lease contracts for the purchase or lease of motor vehicles; wholesale financing services; and commercial lending to motor vehicle dealers. |
| 3,957,815 | KIA MOTORS FINANCE | Retail financing services, namely financing services for consumers engaging in installment sale and lease contracts for the purchase or lease of motor vehicles; wholesale financing services; and commercial lending to motor vehicle dealers. |
| 3,929,200 |  CUSTOMER 360 SERVICE CENTERED AROUND YOU | Printed materials, namely, training guides for automobile dealership personnel in the area of sales, service, and management; decals. Promoting the servicing of automobiles by others through the dissemination |

| REGISTRATION NUMBER | MARKS | GOODS AND SERVICES |
|---|---|---|
| | | of promotional material through the distribution of printed material.<br><br>Training courses in the field of operation, sales, service, and management of automobile dealerships. |
| 3,929,199 | KIA CUSTOMER 360° SERVICE EXPERIENCE | Printed materials, namely, training guides for automobile dealership personnel in the area of sales, service, and management; decals.<br><br>Promoting the servicing of automobiles by others through the dissemination of promotional material through the distribution of printed material.<br><br>Training courses in the field of operation, sales, service, and management of automobile dealerships. |
| 5,886,502 |  KIA GENUINE DIRECT CONQUEST PROGRAM | Business management of reimbursement programs for others; promoting the sale of goods and services of others by rebate and reimbursement; providing an incentive award program for dealers and consumers that provides for discounted pricing for and expedited shipping of specified products to the dealers and consumers for their purchases of said specified products.<br><br>Reimbursement payment processing in the field of automotive parts claims. |
| 6,609,133 | KIA@HOME | Online ordering services featuring automobiles; providing information about automobiles for sale via online network; Online retail store services featuring automobiles to be |

| REGISTRATION NUMBER | MARKS | GOODS AND SERVICES |
|---|---|---|
| | | purchased from others; administration of customer relationship programs; promoting the sale of automobiles of others through automobile dealerships to the general retail public; providing product sales information in the field of automobiles for sale by dealerships; promoting the servicing of automobiles by others. |

19.    KUS has extensively used the Kia Marks in connection with the Kia Products and Kia Services in the United States.  Through its dealers, as discussed below, KUS has sold over 9.79 million vehicles in the United States featuring the Kia Marks since 1994 and for many years has used the Kia Marks with the Kia Services offered in connection with these vehicles and related services.

20.    Indeed, KUS widely promotes, advertises and markets the Kia Products and Kia Services under the Kia Marks.  In doing so, KUS has spent millions of dollars on countless television, radio, online and print advertisements and the operation of a U.S. website located at www.kia.com.

21.    In addition, KUS is the Official Automotive Partner of the National Basketball Association ("**NBA**") the Women's National Basketball Association ("**WNBA**"), and the NBA G League ("**G League**").  KUS is an associate partner of the annual NBA Draft and the title partner of the Kia NBA Tip-Off, the Kia NBA All-Star MVP award and the monthly Kia NBA Performance Awards.  KUS serves as the awarding sponsor for the All-NBA, All-Defensive, and All-Rookie Teams as well as for all WNBA and G League end-of-season awards.  KUS also has partnerships with the following NBA teams: the Atlanta Hawks, Charlotte Hornets, Chicago Bulls, Cleveland Cavaliers, Detroit Pistons, Golden State Warriors, Los Angeles Clippers, Miami Heat, New Orleans Pelicans, New York Knicks, Orlando

1  Magic, Philadelphia 76ers, and the Phoenix Suns.  In 2015, KUS collaborated with

2  LeBron James to create a customized, one of a kind, "King James Edition" Kia

3  K900 vehicle, which was auctioned off to charity with the proceeds benefiting The

4  LeBron James Family Foundation.

5         22.    KUS also engages with communities throughout the United States

6  through its partnerships with various charities, awareness groups, and

7  environmental organizations, such as DonorsChoose.org, B.R.A.K.E.S. (Be

8  Responsible And Keep Everyone Safe), The Ecology Center in Orange County,

9  California, and The Pacific Marine Mammal Center in Laguna Beach, California. In

10  2020, KUS donated one million dollars to its charities Covenant House, StandUp

11  for Kids, and Positive Tomorrow as part of its "Yards Against Homelessness"

12  Program, to fight homelessness among young people.

13         23.    These numerous sponsorships and partnerships have raised public

14  awareness and recognition in the United States of the Kia brand and the Kia Marks

15  in connection with the Kia Products and the Kia Services offered in connection

16  therewith.

17         24.    Furthermore, in 2021 Kia Products received numerous awards for

18  safety, value, and quality, including the U.S. News & World Report's 2021 "Best

19  Cars for the Money" Awards for the Kia Forte, the Kia Soul, and the Kia Sorento,

20  PARENTS Magazine's 2021 Best Family Car for Kia Sorento, Autotrader's 2021

21  Best New Car Award for Kia K5 and Kia Sorento, and 2021 *MotorWeek* Driver's

22  Choice Award for the Kia K5.  *See* **Exhibit B** for details.  Moreover, KUS earned

23  more number-one ranked models than any other automaker, according to the J.D.

24  2021 U.S. Initial Quality Study ("**IQS**").  J.D. Power also named KUS the number

25  one mass-market automotive brand in the industry for the seventh consecutive year.

26  *See id.*

27         25.    Additionally, in 2020 Kia Products were recognized as U.S. News &

28  World Report's Best SUV Brand, and World Car of the Year for Kia Telluride and

World Urban Car for Kia Soul EV.  In 2019, KUS had more vehicles with Top Safety Pick ("**TSP**") and Top Safety Pick Plus ("**TSP+**") ratings than any other brand according to IIHS, with a dozen vehicles receiving TSP/TSP+ Ratings.  In the same year, KUS also swept the Intellichoice Certified Pre-Owned ("**CPO**") awards, winning Best Used Cost of Ownership and Best CPO Warranty Program.  *See id.*

26.     These awards and achievements underscore the fame and recognition of the Kia Marks in connection with the Kia Products, as well as the Kia Services, which augment the sales, value and safety of the Kia Products.

27.     As a result of KUS's extensive sales, advertising, marketing, promotional efforts, and varied awards and achievements, the distinctive Kia Marks have become well-known and recognized by the public, and serve to identify the source of the Kia Products and Kia Services.  Indeed, the Kia Marks are renowned throughout the United States and famous, including in the State of California, and are associated with the qualities of safety, trust, customer service, innovation, durability, technology, performance and confidence by consumers.

### The Kia Dealer Agreement

28.     KUS offers the Kia Products and the Kia Services through authorized dealers within the United States.  The relationships between KUS and each of these dealers is governed by a Kia Dealer Sales and Service Agreement (the "**Kia Dealer Agreement**"), which sets forth requirements and standards to ensure that customers of Kia Products receive the same consistently high-quality service and assistance throughout the United States.

29.     Each Kia Dealer Agreement consists of, among other things, a Part 1, which contains "Specific Terms" applicable to the specific Kia dealer, and Part 2, the "Standard Provisions" that are applicable to all authorized Kia dealers.  The Kia Dealer Agreement  refers to the Kia dealer as "DEALER" and to KUS as "COMPANY."

30.     Only persons and entities who are appointed by KUS through the issuance and execution of a Kia Dealer Agreement are authorized to use the Kia Marks as specified in the Kia Dealer Agreement in connection with the Kia Products and Kia Services.

31.     The Kia Dealer Agreement also prohibits the dealer from changing its ownership or management, selling its Kia dealership, or transferring any of its rights under the agreement to a third party without KUS's express prior written approval.

### The Rally Kia Dealer Agreement

32.     KUS and Rally Kia are parties to a Kia Dealer Agreement, which was fully executed as of  January 10, 2011, and was amended by an "Amendment & Addendum to Kia Dealer Sales and Service Agreement (Fully Exclusive Facility)," fully executed as of January 10, 2011; an "Amendment to Kia Dealer Sales and Service Agreement," fully executed as of February 11, 2013; an "Amendment to Kia Dealer Sales and Service Agreement," fully executed as of May 1, 2015; and a "Third Amendment to Kia Dealer Sales and Service Agreement," fully executed as of October 2, 2018 (collectively, "**Rally Kia Dealer Agreement**").  A true and accurate copy of the January 10, 2011 Rally Kia Dealer Agreement is attached hereto as **Exhibit C**, a true and accurate copy of the February 11, 2013 Amendment is attached hereto as **Exhibit D**, a true and accurate copy of the May 1, 2015 Amendment is attached hereto as **Exhibit E**, and the October 2, 2018 Third Amendment to Kia Dealer Sales and Service Agreement is attached hereto as **Exhibit F**.

33.     The Rally Kia Dealer Agreement authorizes Rally Kia to operate as an authorized Kia dealer at 438 Auto Vista Drive, Palmdale, California 93351 (the "**Authorized Location**").

34.     As reflected in all Kia Dealer Agreements, including the Rally Kia Dealer Agreement, the identity of the dealer's ownership and management is of

Hogan Lovells US LLP
Attorneys At Law
Los Angeles

COMPLAINT

critical importance to KUS.  For example, Part 1 provides that "COMPANY enters into this Agreement expressly relying upon DEALER's integrity, ability, assurance of personal services, expressed intention to deal fairly with the consuming public and with COMPANY, and promise to adhere to the terms and conditions herein." Part 1 goes on to identify all of the owners and managers of the dealership, and specifically identifies one individual as the "Dealer Operator," whose responsibilities are further described in the Standard Provisions.

35.     The October 2, 2018 Third Amendment to Kia Dealer Sales and Service Agreement identifies LAMayle Family Trust, William W. Penn and Patrick Bonas as owners of the dealership.  It identifies Mr. Penn as the sole Dealer Operator.

36.     Part 2, Article IV of the Rally Kia Dealer Agreement, provides in pertinent part as follows: "COMPANY enters into this Agreement in reliance upon DEALER'S representation that the person(s), and only the person(s) identified in Part 1 will be the owner(s) of DEALER ("Owner" or "Owners") . . . .  There shall be no direct or indirect change in the identity of any Owner . . . other than in strict compliance with Article XI of this Agreement…"

37.     Part 2, Article XI of the Rally Kia Dealer Agreement, provides in pertinent part as follows: "DEALER and COMPANY recognize that this is a personal services agreement based upon the personal skills, service, qualifications and commitment of DEALER'S Owners. For this reason and because COMPANY has entered into this Agreement in reliance upon the Owners' qualifications, DEALER agrees to notify COMPANY in writing of any change in ownership and obtain COMPANY's prior written consent to any proposed change in an interest amounting to five percent (5%) or more of the ownership of DEALER's Kia dealership . . . ."

38.     Part 2, Article V of the Rally Kia Dealer Agreement, entitled "Management of the Dealership," provides in pertinent part as follows: "DEALER .

. . agrees, and COMPANY enters into this Agreement in reliance upon DEALER'S agreement that the individual identified in Part 1 as the Dealer Operator, and no other person, will, at all times, be an Owner, being in complete charge of DEALER'S Kia dealership operations and will have total authority to make all decisions with respect to DEALER'S Kia dealership operations. . . . There shall be no change in the identity of the Dealer Operator except with COMPANY's prior written consent…"

39.     Part 2, Article IX.A.3.b of the Rally Kia Dealer Agreement, contains, among other things, provisions governing DEALER's permissible use of the Kia Marks.  In those provisions, KUS grants to DEALER the "non-exclusive privilege of displaying or otherwise using" the Kia Marks "in connection with the selling and servicing of Kia Products."  Article IX.A.3.b further provides that "DEALER may use the Kia Marks only at the locations identified in Part 1 and for the purposes stated in this Agreement."  In addition, this section states that "DEALER agrees that it will promptly discontinue the display and use of any and all Kia Marks . . . when and for any reason COMPANY requests that it do so."

40.     Accordingly, through its Kia Dealer Agreement, Rally Kia was granted a limited, non-exclusive license to use the Kia Marks in connection with its Kia dealership operations at its Authorized Location.  The Kia Dealer Agreement does not authorize Rally Kia to assign, sublicense, or otherwise transfer its non-exclusive license to use the Kia Marks.  KUS has never authorized Rally Kia to assign, sublicense, or otherwise transfer its non-exclusive license to use the Kia Marks to any third party.

<b>The Unauthorized Use of the Kia Marks</b>

41.     On or about July 22, 2021, Rally Kia entered into the Asset Purchase Agreement with Mr. Khan for the sale and purchase of the assets and business of Rally Kia (the "**Proposed APA**"). The Proposed APA was later amended by a "Second Amendment to Asset Purchase Agreement," fully executed as of

November 17, 2021; a "Third Amendment to Asset Purchase Agreement," fully executed as of November 29, 2021; and a "Fourth Amendment to Asset Purchase Agreement," fully executed as to December 14, 2021.

42.     On August 2, 2021, Mr. Khan registered a limited liability company named Dalia *Kia* Properties and Holdings LLC with the state of California.  Mr. Khan is the sole managing member of this entity.  Only very recently was the name of this entity amended to Dalia K Properties and Holdings LLC.

43.     Pursuant to Part 2, Article XI of the Rally Kia Dealer Agreement, Rally Kia was required to request and obtain KUS's prior written approval before transferring its Kia dealership assets.

44.     By letters addressed to Mr. Penn and Mr. Khan dated October 29, 2021, and November 5, 2021, KUS advised Rally Kia and Mr. Khan that it objected to and was declining to approve the proposed transfer of the Kia dealership assets to Mr. Khan.

45.     Upon information and belief, the parties to the Proposed APA closed on said agreement, or on some amended form of said agreement, in December 2021, notwithstanding KUS's express objections to, and disapproval of, the transfer of the Kia dealership assets to Mr. Khan.

46.     On January 6, 2022, Mr. Penn informed KUS for the first time of the existence of a Consulting Agreement between Rally Kia and Mr. Khan, fully executed as of December 14, 2021 ("**Consulting Agreement**"). Mr. Penn stated that the Consulting Agreement was "to support Rally's operation and management of the Kia dealership while Mr. Khan submits additional application materials to Kia in support of his application to become an approved Kia dealer."  A true and accurate copy of the Consulting Agreement is attached hereto as **Exhibit G**.

47.     KUS provisionally rejected Mr. Khan's dealer application and the Proposed APA in September 2021.  After learning of misrepresentations made by Mr. Khan in his application, namely, the omission of Mr. Khan's previous

unsatisfactory ownership of a Kia dealership, on October 29, 2021, KUS again informed Rally Kia and Mr. Khan that Mr. Khan's dealer application and the Proposed APA were disapproved.

48. Despite the multiple express disapprovals of the Proposed APA, Rally Kia executed the Consulting Agreement.  Through its execution of the Consulting Agreement, Rally Kia effected a transfer of an interest in its Kia operations – and a purported assignment and/or delegation of Rally Kia's rights, obligations and responsibilities under the Rally Kia Dealer Agreement – to the Dalia Defendants, without notice to KUS and over KUS's objections.

49. For example, the Consulting Agreement contains the following provisions surrendering control of the dealership to the Dalia Defendants (Rally Kia is referred to in the agreement as "Dealer"): Paragraph 2: "Consultant shall provide all of the operating capital necessary for the operation of the Dealership, and all funds provided, and income earned during the Term *shall belong to the Consultant . . .*"; Paragraph 4(b): "Dealer *will take* all necessary or desirable actions within its *control to effectuate Consultant's advice*, including without limitation, Dealer's endorsement of any negotiable instruments needed for the continued operations of the Dealership"; Paragraph 4(f): "Consultant may advise Dealer to *hire or terminate employees* of Dealer . . . as Consultant deems necessary . . . and Dealer will take under advice all necessary or desirable actions to effectuate Consultant's recommended personnel decisions"; and Paragraph 6(c): "Consultant . . . will continue to be responsible for *all Dealer obligations* incurred during the term of this Agreement" (emphasis added).

50. Although the Consulting Agreement also provides that Mr. Penn is to remain "Dealer Operator," the reality is that the Dalia Defendants are responsible for providing all capital, paying all operating expenses, making personnel and business operations decisions and bearing all financial risk for, and entitled to all financial benefit from, Rally Kia's operations.  The Dealer Operator is also

obligated to effectuate the Dalia Defendants' advice concerning the operations of Rally Kia.  As such, the responsibilities of the Dealer Operator have effectively been delegated to Dalia Auto and Mr. Khan.

51.     Additionally, Section 2 of the Fourth Amendment to Asset Purchase Agreement provides that Mr. Khan would continue to seek approval of a formal closing on the sale of Rally Kia's "Kia Retained Assets" and, if satisfied, Rally Kia would convey these "retained" Kia assets to Mr. Khan with *no additional payment* from any of the Dalia Defendants or any other persons or entities.  This amendment reflects that a nonrefundable "Kia Premium" paid at closing was effectively a payment for Rally Kia's purportedly "retained" Kia Assets.

52.     Based on the foregoing, it is apparent that, at the least, management of the dealership has been transferred from Rally Kia to a person who has not been authorized by KUS, and that there also has been a *de facto* transfer of ownership as well.  Because Rally Kia has breached its contractual obligations to request and obtain KUS's prior written approval for any such changes, KUS does not know the full extent of the unauthorized agreements entered into by the dealership.

53.     KUS has never authorized Rally Kia to sub-license use of any of their limited trademark rights to the Kia Marks to the Dalia Defendants, Dalia K, or any third party, nor has KUS ever authorized the Dalia Defendants or Dalia K to use the Kia Marks in any way whatsoever.  For instance, KUS has never authorized the Dalia Defendants to hold themselves out as authorized Kia dealers, has never authorized the Dalia Defendants to register a limited liability company named Dalia *Kia* Properties and Holdings LLC, and has never authorized the Dalia Defendants or Dalia K to conduct business using the Kia Marks.

54.     Accordingly, the Dalia Defendants' and Dalia K's use of the Kia Marks in connection with the Rally Kia dealership is willful and with full knowledge that such use is unapproved and unauthorized by KUS and in violation of the Rally Kia Dealer Agreement.  Likewise, Rally Auto Group's transfer of

control and ownership of the Rally Kia Dealership to the Dalia Defendants constitutes a breach of the Rally Kia Dealer Agreement.

## FIRST CLAIM FOR RELIEF

### Direct and Contributory Federal Trademark Infringement – 15 U.S.C. § 1114
### (All Defendants)

55.     KUS incorporates by reference each allegation contained in the preceding paragraphs if fully set forth herein.

56.     KUS is the owner of all right, title, and interest in the Kia Marks (as set forth above) and has standing to maintain an action for trademark infringement under the Federal Trademark Statute, Lanham Act § 32(1) (15 U.S.C. § 1114(1)).

57.     The Kia Marks are inherently distinctive and naturally serve to identify KUS  as the source of the Kia Products and Kia Services, including sales of new and certified pre-owned Kia vehicles, to consumers.

58.     Through its extensive promotional, advertising, marketing, sales, partnerships, accolades, and exclusive use of the Kia Marks, the Kia Marks have also acquired distinctiveness in the market.

59.     By using or continuing to use the Kia Marks in connection with the sale, offering for sale, advertising, or promotion of new and certified pre-owned car operations, after KUS denied Mr. Khan's application to purchase the Kia dealership assets of Rally Kia, and advised in writing that KUS did not approve said transfer of assets, the Dalia Defendants and Dalia K have knowingly exploited the Kia Marks with knowledge that they had no right to do so.

60.     The Dalia Defendants and Dalia K, without approval from KUS, have used in commerce the Kia Marks in connection with the sale, offering for sale, advertising, or promotion of new and certified pre-owned car operations, which is likely to cause confusion, or to cause mistake or to deceive consumers as to KUS's approval, affiliation, connection, association, or sponsorship of the new management and/or ownership of the Rally Kia dealership, in violation of Lanham

Act 15 U.S.C § 1114(1)(a).

61.    KUS is informed and believes, and on that basis alleges, that the Dalia Defendants' and Dalia K's acts have been committed deliberately and willfully, with knowledge of KUS's exclusive rights and goodwill in the Kia Marks, and of the infringing nature of the marks when used without KUS approval in connection with the sale, offer for sale, promotion, or advertising of new and certified pre-owned car services at the Rally Kia dealership, as well as with bad faith and the intent to cause confusion, or to cause mistake and/or to deceive.

62.    Rally Kia has intentionally induced, encouraged, and materially assisted the Dalia Defendants' and Dalia K's infringement of the Kia Marks by, inter alia: (1) purporting to sublicense or assign tits limited, non-exclusive trademark rights to the Kia Marks to the Dalia Defendants and Dalia K without authorization and authority from KUS to do so; (2) transferring the management control and/or ownership of the Rally Kia dealership to the Dalia Defendants, without KUS's authorization and despite KUS's express written objection to said transfer; and (3) furnishing the Dalia Defendants and Dalia K with Kia vehicles and marketing materials, with full knowledge that the Dalia Defendants and Dalia K were engaging in the unlawful infringement of the Kia Marks.

63.    Rally Kia's, the Dalia Defendants', and Dalia K's acts and unauthorized use of the Kia Marks allow them to impermissibly benefit from KUS's goodwill, reputation, and success.

64.    As a result of Rally Kia's, the Dalia Defendants', and Dalia K's acts and unauthorized use of the Kia Marks, consumers have been and, unless Rally Kia, the Dalia Defendants, and Dalia K are restrained, will continue to be, confused as to KUS's affiliation, connection, sponsorship, or approval of Rally Kia's sales of new and certified pre-owned cars. and Rally Kia, the Dalia Defendants, and Dalia K will have unfairly derived, and will continue to unfairly derive, income, profits, and business opportunities as a result of their acts of infringement.

65.     KUS has been, and will continue to be, damaged by Rally Kia's, the Dalia Defendants', and Dalia K's acts of infringement in an amount to be determined at trial.

66.     Upon information and belief, Rally Kia's, the Dalia Defendants', and Dalia K's conduct is willful, deliberate, intentional, and in bad faith.

67.     As a result of Rally Kia's, the Dalia Defendants', and Dalia K's acts, Rally Kia, the Dalia Defendants, and Dalia K have caused, and will continue to cause, irreparable harm to KUS and to the goodwill associated with the Kia Marks, for which KUS has no adequate remedy at law.

68.     As the acts alleged herein constitute infringement of the Kia Marks under 15 U.S.C. § 1114(1), and as KUS has no adequate remedy at law, KUS is entitled to injunctive relief as well as to Rally Kia's, the Dalia Defendants', and Dalia K's profits and other remedies provided by 15 U.S.C. §§ 1116, 1117, and 1118, and to reasonable attorney's fees and prejudgment interest pursuant to 15 U.S.C. §1117(b).

## SECOND CLAIM FOR RELIEF

**Direct and Contributory Unfair Competition by False Designation of Origin and False or Misleading Representation – 15 U.S.C. § 1125(a)(1)(A) (All Defendants)**

69.     KUS repeats and realleges each allegation contained in the preceding paragraphs as if fully set forth herein.

70.     As discussed herein KUS is the registered owner of the Kia Marks, and as a result of its extensive use of the Kia Marks, also has common law rights to the Kia Marks, which are uniquely associated with KUS as the source of the Kia Products and Kia Services.

71.     The Kia Marks are inherently distinctive and/or have acquired distinctiveness.

72.     The Dalia Defendants and Dalia K, without approval from KUS, and with actual and constructive notice of KUS's disapproval thereof, have used in

1  commerce the Kia Marks in connection with the sale, offering for sale, advertising,
2  or promotion of new and certified pre-owned car operations, which is likely to
3  cause confusion, or to cause mistake or to deceive consumers as to KUS's approval,
4  affiliation, connection, association, or sponsorship of the new management and/or
5  ownership of the Rally Kia dealership, in violation of Lanham Act 15 U.S.C §
6  1125(a)(1)(A).

7      73.    Rally Kia has also engaged in, and intentionally induced, encouraged,
8  and materially assisted the Dalia Defendants' and Dalia K's acts of unfair
9  competition by, *inter alia*: (1) purporting to sublicense or assign its limited, non-
10 exclusive trademark rights to the Kia Marks to the Dalia Defendants and Dalia K
11 without authorization and authority from KUS to do so; (2) transferring the
12 management control and/or ownership of the Rally Kia dealership to the Dalia
13 Defendants, without KUS's authorization and despite KUS's express written
14 objection to said transfer; and (3) furnishing the Dalia Defendants and Dalia K with
15 Kia vehicles and marketing materials, with full knowledge that the Dalia
16 Defendants and Dalia K were engaging in the unlawful infringement of the Kia
17 Marks.

18     74.    KUS has been, and will continue to be, damaged by Rally Kia's, the
19 Dalia Defendants', and Dalia K's acts of unfair competition in an amount to be
20 determined at trial.

21     75.    Upon information and belief, Rally Kia's, the Dalia Defendants', and
22 Dalia K's conduct is willful, deliberate, intentional and in bad faith, and if not
23 restrained, Rally Kia, the Dalia Defendants, and Dalia K will have unfairly derived,
24 and will continue to derive, income, profits, and business opportunities as a result
25 of their wrongful acts.

26     76.    As a result of Rally Kia's, the Dalia Defendants', and Dalia K's acts,
27 Rally Kia, the Dalia Defendants, and Dalia K have caused, and will continue to
28 cause, irreparable harm to KUS and the goodwill associated with the Kia Marks, for

which KUS has no adequate remedy at law.

77.     As the acts alleged herein violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and as KUS has no adequate remedy at law, KUS is entitled to injunctive relief as well as to Rally Kia's, the Dalia Defendants', and Dalia K's profits and other remedies provided by 15 U.S.C. §§ 1116, 1117, and 1118, and to reasonable attorney's fees and prejudgment interest pursuant to 15 U.S.C. §1117(a).

## THIRD CLAIM FOR RELIEF

### Direct and Contributory Federal Trademark Dilution – 15 U.S.C. § 1125(c)
### (All Defendants)

78.     KUS incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

79.     As discussed above, KUS is the owner of the Kia Marks, which are strong, well-known and distinctive marks that acquired fame prior to the commencement of Rally Kia's, the Dalia Defendants', and Dalia K's wrongful actions.

80.     The Dalia Defendants' and Dalia K's unauthorized commercial use of the Kia Marks have caused or are causing dilution by tarnishing the famous Kia Marks, and otherwise impairs the distinctiveness and/or harms the reputation of those trademarks.  The Dalia Defendants' and Dalia K's conduct tarnishes and degrades the positive associations of the Kia Marks.

81.     Rally Kia has intentionally induced, encouraged, and materially assisted the Dalia Defendants' and Dalia K's dilution of the Kia Marks by, *inter alia*: (1) purporting to sublicense or assign its limited, non-exclusive trademark rights to the Kia Marks to the Dalia Defendants and Dalia K without authorization and authority from KUS to do so; (2) transferring the management control and/or ownership of the Rally Kia dealership to the Dalia Defendants, without KUS's authorization and despite KUS's express written objection to said transfer; and (3) furnishing the Dalia Defendants and Dalia K with Kia vehicles and marketing

materials, with full knowledge that the Dalia Defendants and Dalia K were engaging in the unlawful infringement of the Kia Marks.

82.    KUS is informed and believes, and on that basis alleges, that Rally Kia's, the Dalia Defendants', and Dalia K's acts are willful in that Rally Kia, the Dalia Defendants, and Dalia K willfully intend to, and in fact, do, trade on the reputation of the Kia Marks and/or to cause dilution of the Kia Marks.

83.    Rally Kia's, the Dalia Defendants', and Dalia K's wrongful acts have caused and will continue to cause great and irreparable injury and damage to KUS and to the goodwill in the Kia Marks, which injury and damage cannot be adequately quantified, and unless this Court restrains Rally Kia, the Dalia Defendants, and Dalia K from further commission of said acts, KUS will continue to suffer substantial irreparable injury, for which it has no adequate remedy at law.

84.    Due to the acts of Rally Kia, the Dalia Defendants, and Dalia K, KUS has suffered and will continue to suffer loss of income, profits, and valuable business opportunities, and, if not restrained, Rally Kia, the Dalia Defendants, and Dalia K will have unfairly derived and will continue to unfairly derive income, profits and business opportunities as a result of their acts as described herein.

85.    As the acts alleged herein constitute willful violations of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), and, as KUS has no adequate remedy at law, KUS is entitled to injunctive relief, as well as to Rally Kia's, the Dalia Defendants', and Dalia K's profits and other remedies provided by 15 U.S.C. §§ 1116, 1117 and 1118, and reasonable attorney's fees and prejudgment interest pursuant to 15 U.S.C. §1117(a).

## FOURTH CLAIM FOR RELIEF
### Trademark Infringement
**(All Defendants)**

86.    KUS incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

87.     As set forth above, KUS is the owner of the Kia Marks, which are famous and distinctive marks entitled to protection under federal and California law.

88.     Without KUS's consent, the Dalia Defendants and Dalia K have used the Kia Marks in commerce or in connection with the sale, offering for sale, advertising or promotion of their new and certified pre-owned car operations, which is likely to cause confusion, or to cause mistake or to deceive consumers as to KUS's affiliation, connection, association, sponsorship, or approval of, the new management and/or ownership of the Rally Kia dealership, in violation of California law.

89.     Rally Kia has intentionally induced, encouraged, and materially assisted the Dalia Defendants' and Dalia K's infringement of the Kia Marks by, *inter alia*: (1) purporting to sublicense or assign its limited, non-exclusive trademark rights to the Kia Marks to the Dalia Defendants and Dalia K without authorization and authority from KUS to do so; (2) transferring the management control and/or ownership of the Rally Kia dealership to the Dalia Defendants, without KUS's authorization and despite KUS's express written objection to said transfer; and (3) furnishing the Dalia Defendants and Dalia K with Kia vehicles and marketing materials, with full knowledge that the Dalia Defendants and Dalia K were engaging in the unlawful infringement of the Kia Marks.

90.     KUS is informed and believes, and on that basis alleges, that Rally Kia's, the Dalia Defendants', and Dalia K's acts have been committed deliberately and willfully, with knowledge of KUS's exclusive rights and goodwill in the Kia Marks, as well as with bad faith and the intent to cause confusion, or to cause mistake and/or to deceive consumers as to KUS's affiliation, connection, association, sponsorship, or approval of the new management and/or ownership of the Rally Kia dealership.

//

91.     As a result of Rally Kia's, the Dalia Defendants', and Dalia K's trademark infringement, KUS has suffered and will continue to suffer substantial and irreparable injury, loss, and damage to its rights in and to the Kia Marks, as well as the goodwill associated therewith, for which it has no adequate remedy at law.

92.     If not restrained, Rally Kia, the Dalia Defendants, and Dalia K will have unfairly derived and will continue to unfairly derive income, profits, and business opportunities as a result of their acts of infringement.

93.     As the acts alleged herein constitute infringement of the Kia Marks, and as KUS has no adequate remedy at law, KUS is entitled to injunctive relief as well as to other common law remedies.

## FIFTH CLAIM FOR RELIEF
### Common Law Unfair Competition
### (All Defendants)

94.     KUS incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

95.     Without KUS's consent, the Dalia Defendants and Dalia K have used the Kia Marks in commerce or in connection with the sale, offering for sale, advertising or promotion of their new and certified pre-owned car operations, which is likely to cause confusion, or to cause mistake or to deceive consumers as to KUS's affiliation, connection, association, sponsorship, or approval of, the new management and/or ownership of the Rally Kia dealership, in violation of California law.

96.     Rally Kia has intentionally induced, encouraged, and materially assisted the Dalia Defendants' and Dalia K's act of unfair competition by, *inter alia*: (1) purporting to sublicense or assign its limited, non-exclusive trademark rights to the Kia Marks to the Dalia Defendants and Dalia K without authorization and authority from KUS to do so; (2) transferring the management control and/or

ownership of the Rally Kia dealership to the Dalia Defendants, without KUS's authorization and despite KUS's express written objection to said transfer; and (3) furnishing the Dalia Defendants and Dalia K with Kia vehicles and marketing materials, with full knowledge that the Dalia Defendants and Dalia K were engaging in the unlawful infringement of the Kia Marks.

97.     KUS is informed and believes, and on that basis alleges, that Rally Kia's, the Dalia Defendants', and Dalia K's acts have been committed deliberately and willfully, with knowledge of KUS's exclusive rights and goodwill in the Kia Marks, as well as with bad faith and the intent to cause confusion, or to cause mistake and/or to deceive consumers as to KUS's affiliation, connection, association, sponsorship, or approval of the new management and/or ownership of the Rally Kia dealership.

98.     As a result of Rally Kia's, the Dalia Defendants', and Dalia K's unfair competition, KUS has suffered and will continue to suffer substantial and irreparable injury, loss, and damage to its rights in and to the Kia Marks, as well as the goodwill associated therewith, for which it has no adequate remedy at law.

99.     If not restrained, Rally Kia, the Dalia Defendants, and Dalia K will have unfairly derived and will continue to unfairly derive income, profits, and business opportunities as a result of their acts of unfair competition.

100.    Accordingly, KUS is entitled to injunctive relief as well as to other common law remedies against Rally Kia, the Dalia Defendants, and Dalia K.

## SIXTH CLAIM FOR RELIEF
### Breach of Contract
### (Rally Kia)

101.    KUS incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

102.    As described above, KUS and Rally Kia are parties to the fully executed Rally Kia Dealer Agreement, whereby KUS allows Rally Kia to use the

Kia Marks in connection with its Kia dealership in accordance with certain restrictions and limitations.

103.   Rally Kia has breached its Kia Dealer Agreement by transferring management control and/or *de facto* ownership of its dealership to the Dalia Defendants without KUS's prior written consent, and in spite of notice of KUS's express written disapproval.

104.   By transferring management control and/or *de facto* ownership of their respective dealerships to the Dalia Defendants without KUS's prior written consent, and in spite of its express written disapproval, Rally Kia has breached the provisions of its Kia Dealership Agreement in which it agreed that it would not change ownership or management, or sell its Kia dealership, or transfer any of its rights under the agreement to a third party without KUS's express prior written approval.

105.   Rally Kia's breach of its Kia Dealership Agreement threatens KUS with irreparable harm in the form of, among other things, loss of control over the display and use of the Kia Marks and loss of control over the management and operation of authorized Kia dealerships in its dealer network.

106.   By reason of the foregoing, KUS is entitled to preliminary and permanent injunctive relief preventing Rally Kia from displaying the Kia Marks and conducting dealership operations at the Rally Kia locations, or any other Authorized Location, as well as damages to be proven at trial.

## SEVENTH CLAIM FOR RELIEF

### Violation of California Business and Professional Code  § 14245
### (Dalia Defendants and Dalia K)

107.   KUS incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

108.   As set forth above, KUS is the owner of the Kia Marks, which are famous and distinctive marks entitled to protection under federal and California

law.

109.   Without KUS's consent, the Dalia Defendants and Dalia K have used the Kia Marks in commerce on or in connection with the sale, distribution, offering for sale, or advertising of their new and certified pre-owned car operations, which is likely to cause confusion, or to cause mistake or to deceive consumers as to KUS's affiliation, connection, association, sponsorship, or approval of, the new management and/or ownership of the Rally Kia dealership, in violation of California law.

110.   KUS is informed and believes, and on that basis alleges, the Dalia Defendants' and Dalia K's acts have been committed deliberately and willfully, with knowledge of KUS's exclusive rights and goodwill in the Kia Marks, as well as with bad faith and the intent to cause confusion, mistake and/or to deceive consumers as to KUS's affiliation, connection, association, sponsorship, or approval of the new management and/or ownership of the Rally Kia dealership.

111.   As a result of the Dalia Defendants' and Dalia K's trademark infringement, KUS has suffered and will continue to suffer substantial and irreparable injury, loss, and damage to its rights in and to the Kia Marks, as well as the goodwill associated therewith, for which it has no adequate remedy at law.

112.   If not restrained, the Dalia Defendants and Dalia K will have unfairly derived and will continue to unfairly derive income, profits, and business opportunities as a result of their acts of infringement.

113.   As the acts alleged herein constitute infringement of the Kia Marks, and as KUS has no adequate remedy at law, KUS is entitled to injunctive relief as well as to the other remedies and penalties set forth in Cal. Bus. & Prof. Code § 14250 for violations of Cal. Bus. & Prof. Code § 14245.

//

//

//

# EIGHTH CLAIM FOR RELIEF

## Violation of California Business and Professional Code  § 17200
### (Dalia Defendants and Dalia K)

114.   KUS incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

115.   As set forth above, KUS is the owner of the Kia Marks, which are famous and distinctive marks entitled to protection under federal and California law.

116.   Without KUS's consent, the Dalia Defendants and Dalia K have used the Kia Marks in commerce on or in connection with the sale, distribution, offering for sale, or advertising of their new and certified pre-owned car operations, which is likely to cause confusion, or to cause mistake or to deceive consumers as to KUS's affiliation, connection, association, sponsorship, or approval of, the new management and/or ownership of the Rally Kia dealership, in violation of California law.

117.   KUS is informed and believes, and on that basis alleges, the Dalia Defendants' and Dalia K's acts have been committed deliberately and willfully, with knowledge of KUS's exclusive rights and goodwill in the Kia Marks, as well as with bad faith and the intent to cause confusion, mistake and/or to deceive consumers as to KUS's affiliation, connection, association, sponsorship, or approval of the new management and/or ownership of the Rally Kia dealership.

118.   As a result of the Dalia Defendants' and Dalia K's unfair competition, KUS has suffered and will continue to suffer substantial and irreparable injury, loss, and damage to its rights in and to the Kia Marks, as well as the goodwill associated therewith, for which it has no adequate remedy at law.

119.   If not restrained, the Dalia Defendants and Dalia K will have unfairly derived and will continue to unfairly derive income, profits, and business opportunities as a result of their acts of infringement.

120.   As the acts alleged herein constitute infringement of the Kia Marks, and as KUS has no adequate remedy at law, KUS is entitled to injunctive relief as well as to the other remedies and penalties set forth in Cal. Bus. & Prof. Code § 17202-06 for violations of Cal. Bus. & Prof. Code § 17200.

## **PRAYER FOR RELIEF**

**WHEREFORE,** KUS prays for judgment as follows:

A.     For an order finding that Rally Kia, the Dalia Defendants, and Dalia K violated 1) 15 U.S.C. § 1114; (2) Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (3) 15 U.S.C. § 1125(c); (4) California common law with respect to trademark infringement; (5) California common law with respect to unfair competition; (6) California common law with respect to breach of contract; (7) Cal. Bus. & Prof. Code § 14245; and (8) Cal. Bus. & Prof. Code § 17200.

B.     For an order preliminarily and permanently enjoining and restraining Rally Kia, Dalia Defendants, and Dalia K, their agents and employees, and all those acting in concert with them, from using the Kia Marks or any colorable imitation thereof in any way, including without limitation by operating or managing a Kia dealership at 438 Auto Vista Drive, Palmdale, California 93351, or any other location;

C.     For an order preliminarily and permanently enjoining and restraining Rally Kia, their agents and employees, and all those acting in concert with them, from licensing, sublicensing, assigning, or otherwise transferring or purporting to transfer to the Dalia Defendants or any other third party any rights to use the Kia Marks;

D.     For an order preliminarily and permanently enjoining Rally Kia, the Dalia Defendants, and Dalia K from committing any other act calculated or likely to cause the public or trade to believe that the Dalia Defendants are in any way connected to, licensed by, sponsored by, affiliated with, or associated with KUS's

1   Products or Services;

2         E.     For an order preliminarily and permanently enjoining Rally Kia, the

3   Dalia Defendants, and Dalia K from committing any acts that will dilute, by

4   tarnishing, the quality of the Kia Marks;

5         F.     For an order pursuant to 15 U.S.C. § 1116(a) directing Defendants to

6   file with the Court and serve on KUS's counsel, within thirty (30) days after service

7   on Defendants of the injunction requested herein, a report in writing under oath

8   setting forth in detail the manner and form in which they have complied with the

9   injunction;

10         G.     For an accounting of all revenues and profits obtained as a result of the

11   violations alleged herein;

12         H.     For restitution and disgorgement of all revenues and profits obtained

13   as a result of the violations alleged herein;

14         I.     For damages according to proof, including treble damages as may be

15   allowed by law;

16         J.     For attorneys' fees as may be allowed by law;

17         K.     For costs of suits as may be incurred herein; and

18         L.     For any other such relief as the Court may deem just and proper.

19

20   Dated:    January 21, 2022        HOGAN LOVELLS US LLP

21

22                       By: _____

23                         Paul B. Salvaty
                         Anna Kurian Shaw

24                         Brendan C. Quinn
                         Hadley Dreibelbis

25                         *Attorneys for Plaintiff*
                      Kia America, Inc.

26

27

28